**WILKES BARRE LACE MFG. CO. v. MUNDY.**

**No. 3780.**

District Court, M. D. Pennsylvania.

Jan. 28, 1937.

See, also, 13 F.Supp. 870.

H. R. Van Deusen, of Scranton, Pa., and Ivins, Phillips, Graves & Barker, of Washington, D. C., for plaintiff.

Frederick V. Follmer, U. S. Atty., of Scranton, Pa., Robert H. Jackson, Asst. Atty. Gen., and F. E. Youngman, Sp. Asst. to Atty. Gen., for defendant.

WATSON, District Judge.

Plaintiff sued the collector of internal revenue for the recovery of the sum of $119,959.69, which the plaintiff claims was wrongfully exacted as processing and floor taxes under the Agricultural Adjustment Act (as amended [7 U.S.C.A. § 601 et seq.]). Defendant filed a motion to dismiss the proceedings on the ground that by the provisions of title 7 of the Revenue Act of 1936 (sections 901–917 [7 U.S.C.A. §§ 623 note, 644–659]), this court is deprived of jurisdiction of this action in so far as it seeks recovery of amounts paid by the plaintiff as processing tax; that, as to floor tax paid, the plaintiff has not shown compliance with new conditions prescribed by title 7 as conditions precedent to the maintenance of an action for amounts paid as floor stock tax, and that plaintiff's claim does not state a cause of action against the defendant. No answer was filed. Upon leave granted, plaintiff filed a brief admitting the applicability of title 7 of the Revenue Act of 1936 to this action, but attacking its constitutionality.

The provisions of the Revenue Act of 1936, which are pertinent, are contained in sections 902, 903, 904, 906, and 910 (7 U.S.C.A. §§ 644, 645, 646, 648, 652), and are as follows:

"Section 902: *Conditions on allowance of refunds* No refund shall be made or allowed, in pursuance of court decisions or otherwise, of any amount paid by or collected from any claimant as tax under the Agricultural Adjustment Act [this chapter], unless the claimant establishes to the satisfaction of the Commissioner in accordance with regulations prescribed by him, with the approval of the Secretary, or to the satisfaction of the trial court, or the Board of Review in cases provided for under Section 906 [section 648 of this title], as the case may be—

"(a). That he bore the burden of such amount and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly, (1) through inclusion of such amount by the claimant, or by any person directly or indirectly under his control, or having control over him, or subject to the same common control, in the price of any article with respect to which a tax was imposed under the provisions of such Act [this chapter], or in the price of any article processed from any commodity with respect to which a tax was imposed under such Act [this chapter], or in any charge or fee for services or processing; (2) through reduction of the price paid for any such commodity; or (3) in any manner whatsoever; and that no understanding or agreement, written or oral, exists whereby he may be relieved of the burden of such amount, be reimbursed therefor, or may shift the burden thereof; or

."(b) That he has repaid unconditionally such amount to his vendee (1) who bore the burden thereof, (2) who has not been relieved thereof nor reimbursed therefor, nor shifted such burden, directly or indirectly, and (3) who is not entitled to receive any reimbursement therefor from any other source, or to be relieved of such burden in any manner whatsoever."

"Section 903. *Filing of claims* No refund shall be made or allowed of any amount paid by or collected from any person as tax under the Agricultural Adjustment Act [this chapter] unless, after the enactment of this Act [June 22, 1936], and prior to July 1, 1937, a claim for refund has been filed by such person in accordance with regulations prescribed by the Commissioner with the approval of the Secretary."

"Section 904. *Statute of limitations* Notwithstanding any other provision of law, no suit or proceeding, whether brought before or after the date of enactment of this Act [June 22, 1936], shall be brought or maintained in any court for the recovery, recoupment, set-off, refund, or credit of, or counterclaim for, any amount paid by or collected from any person as tax (except processing tax, as defined herein) under the Agricultural Adjustment Act [this chapter] (a) before the expiration of eighteen months from the

date of filing a claim therefor under [section 645 of] this title, unless the Commissioner renders a decision thereon within that time."

"Section 906. *Procedure on claims for refunds of processing taxes* (a) Notwithstanding any other provision of law, no suit or proceeding, whether brought before or after the date of the enactment of this Act [June 22, 1936], shall be brought or maintained in any court for the refund of any amount paid or collected as processing tax, as defined herein [section 655 of this title], under the Agricultural Adjustment Act [this chapter], except as provided in this section."

"Section 910. *Liability of collectors* No collector of internal revenue or customs, or internal revenue or customs officer or employee, shall be in any way liable to any person for any act done by him in the assessment or collection of any amount as tax under the Agricultural Adjustment Act [this chapter], or for the recovery of any money exacted by or paid to him and paid into the Treasury, in performance of his official duties under the provisions of such Act, or if such collector or officer acted under the direction of the Secretary or other proper officer of the Government."

It is necessary to decide whether any violation of the Constitution of the United States is involved in the statute. It is contended by the plaintiff that the effect of the statute is to deprive it of a common-law right of action against the collector and, consequently, to deprive it of property without due process of law.

Is right of action against the collector of internal revenue protected by the Constitution? The answer to this question depends upon the nature of the action against the collector. If his liability is based upon the wrong done by him as an individual, plaintiff's right of action against him is "property" within the meaning of the Fifth Amendment, and the remedy for its enforcement cannot be taken away without the substitution of another adequate remedy. Gibbes v. Zimmerman, 290 U.S. 326, 54 S.Ct. 140, 78 L.Ed. 342. On the other hand, if the collector's liability under the circumstances here presented is merely a creature of statute created for the purpose of providing a convenient remedy for a wrong done by the United States, it is not protected by the due process clause of the Fifth Amendment. Remedies provided by Congress for the redress of wrongs committed by the United States are with the consent of the United States and may be withdrawn or changed at any time. The Collector v. Hubbard, 12 Wall. 1, 20 L.Ed. 272; United States v. Clarke, 8 Pet. 436, 8 L.Ed. 1001; Schillinger v. U. S., 155 U.S. 163, 15 S. Ct. 85, 39 L.Ed. 108; Price v. U. S., 174 U.S. 373, 19 S.Ct. 765, 43 L.Ed. 1011; Lynch v. U. S., 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434; Dismuke v. U. S., 297 U. S. 167, 56 S.Ct. 400, 80 L.Ed. 561.

At common law, a collector of internal revenue was liable to the taxpayer for the amount of taxes illegally collected and paid under protest. Elliott v. Swartwout, 10 Pet. 137, 9 L.Ed. 373. As there was no law at that time compelling a collector to pay taxes paid to him under protest into the Treasury, it was held that the collector was liable to the taxpayer even though he had turned the taxes over to the Treasury. Later, Congress passed an act making it the duty of the collector to turn over to the Treasury all amounts received as taxes whether paid under protest or not. Act of 1839 (chapter 82, 5 Stat. 339, 348). In the case of Cary v. Curtis, 3 How. 236, 11 L.Ed. 576, it was held that this statute relieved the collector from liability where money collected by him was paid into the Treasury in compliance with this act, even though it had been paid under protest. In that case it was pointed out that an action for the refund of taxes illegally collected is an action for money had and received based upon a promise implied in law from the fact that the collector is under a duty to return it. The court held, however, that no promise will be implied which is contrary to duty or contrary to law. Shortly after the decision in Cary v. Curtis, supra, Congress passed the Act of February 26, 1845 (chapter 22, 5 Stat. 727), which provided that nothing in section 2 of the Act of March 3, 1839, should be construed to deny or impair the right of any person or persons "who have paid or shall hereafter pay" duties under protest "to maintain any action at law against such collector * * * and to have a right to a trial by jury" to determine the legality and validity of such payment, but such action could be maintained and recovery could be had only if protest "setting forth distinctly and specifically the grounds of objection to the payment thereof" was made in writing at or before the payment of the duties. This act

restored the right to sue collectors, but from the date of enactment of the Act of March 3, 1839, removing the basis for an action in assumpsit until the enactment of the Act of February 26, 1845, restoring the right to sue collectors, or for a period of approximately six years, no right of action existed against collectors of internal revenue for the recovery of amounts illegally collected as taxes and paid into the Treasury pursuant to law. The only remedy which taxpayers had was by appeal to the Secretary of the Treasury. Curtis' Administratrix v. Fiedler, 2 Black, 461, 479, 17 L.Ed. 273; Barney, Collector, v. Watson, 92 U.S. 449, 452, 23 L.Ed. 730; De Lima v. Bidwell, 182 U.S. 1, 178, 21 S.Ct. 743, 45 L.Ed. 1041.

Since the enactment of the Act of 1839, collectors of internal revenue have uniformly been required to remit all collections to the Treasury, but, due to the Act of February 26, 1845, and subsequent legislation, action against the collector has been allowed. Where, however, judgment is rendered against the collector in such action, and it appears that the money was collected in the performance of official duty or under direction of the Secretary of the Treasury or other proper officer, on probable cause, as certified by the court, and paid into the Treasury, no execution may issue against him, but the judgment is to be paid out of the Treasury. R.S. § 989, 28 U.S.C.A. § 842. The exact nature of such suits against a collector was finally settled by the Supreme Court in Moore Ice Cream Company v. Rose, 289 U.S. 373, 53 S.Ct. 620, 77 L. Ed. 1265. The court said, at page 382 of 289 U.S., at page 623 of 53 S.Ct., 77 L. Ed. 1265, "A suit against a collector who has collected a tax in the fulfillment of a ministerial duty is to-day an anomalous relic of bygone modes of thought. He is not suable as a trespasser, nor is he to pay out of his own purse. He is made a defendant because the statute has said for many years that such a remedy shall exist, though he has been guilty of no wrong, and though another is to pay. Philadelphia v. The Collector, supra, page 731, of 5 Wall., 18 L.Ed. 614. There may have been utility in such procedural devices in days when the government was not suable as freely as now. * * * They have little utility to-day, at all events where the complaint against the officer shows upon its face that in the process of collecting he was acting in the line of duty, and that in the line of duty he has turned the money over. In such circumstances, his presence as a defendant is merely a remedial expedient for bringing the government into court."

By the provisions of title 7 of the Revenue Act of 1936 (7 U.S.C.A. §§ 623 note, 644–659), the collector's liability is abolished only in those cases where the collector acted "in performance of his official duties," or "under the direction of the Secretary [of the Treasury] or other proper officer of the Government." Thus, the collector's liability is abolished only in those cases in which he is entitled to exoneration and in which the Supreme Court has said that the action against the collector is "merely a remedial expedient for bringing the government into court." In the present case, that which was collected by the defendant as taxes was collected by him in the performance of his official duties. The money was turned over to the Treasury of the United States, and the collector is entitled to a certificate of probable cause. The plaintiff has alleged these facts in its statement of claim.

Section 910 (7 U.S.C.A. § 652) does not abolish a common-law right of action against the collector. No common-law right of action against the collector exists where he has acted in performance of his official duties or under the direction of the Secretary of the Treasury or other proper officer of the government. Cary v. Curtis, supra; Curtis' Administratrix v. Fiedler, supra. Suits under such circumstances are essentially suits against the United States authorized by Congress and subject to the power of Congress to withdraw its authorization at any time. The Collector v. Hubbard, supra. Where a remedy conferred by statute is prohibited by a subsequent statute, or the law conferring it is repealed, jurisdiction ceases and causes pending at the time of prohibition or repeal fall. Baltimore & P. Railroad Co. v. Gran' 98 U.S. 398, 25 L.Ed. 231.

I conclude that title 7 of the Revenue Act of 1936 is not unconstitutional in so far as it forbids the maintenance of this suit. It does not operate to extinguish any vested right of the plaintiff.

As to the claim for amounts paid as processing taxes, this court is without jurisdiction, in view of section 906 (7 U.S.C.A. § 648); as to the claim for amounts paid as floor taxes, plaintiff has not shown

compliance with the conditions prescribed by the statute, and the suit must be dismissed.

The same result has been reached in a similar case, Butler v. Carney (D.C.Mass.) 17 F.Supp. 133, opinion filed December 2, 1936.

Now, January 28, 1937, the suit is dismissed.